**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **TONY SCATES** | ) | |
| **ID # 1652896,** | ) | |
| **Petitioner,** | ) | |
| **vs.** | ) | **No. 3:12-CV-4850-G-BH** |
| | ) | |
| **WILLIAM STEPHENS,[1]  Director,** | ) | **Referred to U.S. Magistrate Judge** |
| **Texas Department of Criminal** | ) | |
| **Justice, Correctional Institutions Division,** | ) | |
| **Respondent.** | ) | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to Special Order 3-251, this case has been referred for findings, conclusions, and recommendation.  Based on the relevant filings and applicable law, the petition should be denied with prejudice.

**I.  BACKGROUND**

Tony Scates (Petitioner) challenges his conviction for attempted burglary of a habitation in Cause No. F10-00148-X.  The respondent is William Stephens (Respondent), Director of the Texas Department of Criminal Justice, Correctional Institutions Division (TDCJ-CID).

**A.     Factual and Procedural History**

On February 25, 2010, the State indicted Petitioner, alleging that on or about August 3, 2009, in Dallas County, Texas, he attempted to commit burglary of a habitation, enhanced by two prior felonies. (Clerk's Record "C.R.":2).  On May 24, 2010, in Criminal District Court No. 6 of Dallas County, Texas, Petitioner pled guilty as charged in the indictment and was sentenced to thirty-five years' imprisonment.  (C.R.:8-11, 13-15).

---

[1] On June 1, 2013, William Stephens succeeded Rick Thaler as Director of the Correctional Institutions Division of the Texas Department of Criminal Justice.  Under Rule 25(d) of the Federal Rules of Civil Procedure, Stephens "is automatically substituted as a party."

On direct appeal, Petitioner challenged the sentence as overly punitive and argued that he should have instead been sentenced to probation and drug treatment. His conviction and sentence were affirmed on direct appeal, except that the judgment was modified to reflect that Petitioner pled guilty without a plea agreement. *Scates v. State*, No. 05-10-00758-CR, 2011 WL 3211361, slip op. at *1 (Tex. App.–Dallas, July 29, 2011, no pet.). He did not file a petition for discretionary review (PDR).

Petitioner's first state habeas application challenging this conviction, signed August 26, 2011, and received by the trial court on September 22, 2011, was dismissed by the Texas Court of Criminal Appeals for being non-complaint with Texas Rule of Appellate Procedure 73.1 on November 30, 2011. (State Habeas Transcript, WR-56,725-06 "1st S.H.Tr.":cover, 2, 12). Petitioner's second state habeas application, signed on June 18, 2012, and received by the trial court on July 12, 2012, was denied by the Court of Criminal Appeals without written order on September 26, 2012. (State Habeas Transcript, WR-56,725-07 "2nd S.H.Tr.":cover, 2, 12).

Petitioner mailed his petition for federal habeas relief on November 14, 2012. (Pet. at 9). Respondent filed a response on April 5, 2013, and provided the state court records. He asserts that the federal petition is barred by the statute of limitations and that Petitioner's grounds for relief are without merit.[2]  Petitioner did not file a reply brief.

---

[2]     Respondent also claims that Petitioner failed to exhaust his state court remedies with respect to several of the claims that he raises in his federal petition and with respect to certain evidence he has submitted with his federal petition that he did not submit at the state habeas level. (Resp. at 10, 5). "[N]otwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State", courts may deny a habeas petition on the merits. 28 U.S.C. § 2254(b)(2); *see also Jones v. Jones*, 163 F.3d 285, 299 (5th Cir. 1998) (reaffirming pre-AEDPA law that "when, as in this case, exhaustion is not waived, courts have the 'discretion in each case [under § 2254(b)(2)] to decide whether the administration of justice would be better served by insisting on exhausting or by reaching the merits of the petition forthwith'"). In this case, the administration of justice would be better served by bypassing the procedural issue and reaching the merits of the claims based on the evidence submitted.

B.      **Substantive Issues**

Petitioner raises the following claims for relief:

–the indictment was defective (ground three);

–his guilty plea was involuntary because he believed that he would be sentenced to a drug treatment program, rather than prison (ground one);

–petitioner's trial counsel was ineffective for failing to file relevant motions and failing to preserve error on appeal (ground two);

–the evidence is legally insufficient to support his conviction (ground four); and

–his trial court abused its discretion by assessing a punitive sentence and entering a judgment that wrongly stated that he pled guilty pursuant to a plea agreement (Memorandum at 8-9).

## II.  STATUTE OF LIMITATIONS

A.      **Antiterrorism and Effective Death Penalty Act of 1996**

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.

L. 104-132, 110 Stat. 1217, on April 24, 1996.  Title I of the Act applies to all federal petitions for

habeas corpus filed on or after its effective date.  *Lindh v. Murphy*, 521 U.S. 320, 326 (1997).

Because Petitioner filed his petition after its effective date, the Act applies.

Title I of the Act substantially changed the way federal courts handle habeas corpus actions.

One of the major changes is a one-year statute of limitations.  *See* 28 U.S.C. § 2244(d)(1).  The one-

year period is calculated from the latest of either (A) the date on which the judgment of conviction

became final; (B) the date on which an impediment to filing an application created by State action

in violation of the Constitution or laws of the United States is removed, if the applicant was pre-

vented from filing by such State action; (C) the date on which the Supreme Court initially recognizes

a new constitutional right and makes the right retroactively applicable to cases on collateral review;

or (D) the date on which the facts supporting the claim became known or could have become known through the exercise of due diligence.  *See id.* § 2244(d)(1)(A)-(D).

Here, Petitioner has not alleged a state-created impediment (subparagraph (B)) that prevented him from filing his federal petition or any new constitutional right (subparagraph (C)).  The one-year statute of limitations is therefore calculated from the latest of the date his conviction became final (subparagraph (A)) or the date on which he knew or should have known with the exercise of due diligence the facts supporting his claims (subparagraph (D)).

Petitioner did not file a PDR with the Court of Criminal Appeals.  His state conviction therefore became final for purposes of § 2244(d) by the expiration of the thirty-day time frame for seeking further review after his conviction was affirmed on direct appeal, on August 29, 2011.  *See Roberts v. Cockrell*, 319 F.3d 690, 692 (5th Cir. 2003) (holding that, when the petitioner has halted the review process, "the conviction becomes final when the time for seeking further direct review in the state court expires").  The facts supporting the grounds in his federal petition became known or could have become known prior to this date.  Because Petitioner filed his petition more than one year after his conviction became final, a literal application of § 2244(d)(1) renders his November 12, 2012 filing untimely.[3]

**B.  Tolling**

Section 2244 mandates that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending *shall not be counted toward any period of limitation under this subsection*."  28 U.S.C. § 2244(d)(2)

---

[3]  *See Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999) (recognizing that prisoners file their federal pleadings when they place them in the prison mail system).

(emphasis added). The one-year statute of limitations ended on August 29, 2012. When Petitioner signed his first habeas application on August 26, 2011, the statute of limitations had not yet begun to run. His first state application was not properly filed under § 2244(d)(2) because it was dismissed as being non-compliant with a state procedural rule. *Wickware v. Thaler*, 404 Fed. App'x. 856, 858-59 (5th Cir. Dec. 13, 2010) (holding that a state writ dismissed pursuant to Tex. R. App. P. 73.1 was not "properly filed" within the meaning of § 2244(d)(1)(A)); *Davis v. Quarterman*, 342 Fed. App'x. 952, 953 (5th Cir. Aug. 27, 2009) (same).

Respondent concedes that if Petitioner's second state habeas application is considered filed on the date he purportedly signed the application (June 18, 2012), it tolled the statute of limitations, leaving 72 days remaining. Because Petitioner filed his federal habeas petition less than 72 days after his state application was denied on September 26, 2012, his federal petition would be considered timely. Respondent contends that Petitioner's second state application should be considered filed at some later date, that the date it was received by the trial court (July 12, 2012) is a more appropriate filing date, and that the federal petition is therefore untimely. While Respondent acknowledges that a state habeas application is deemed filed on the date it is delivered to prison authorities, *Richards v. Thaler*, 710 F.3d 573, 576-77 (5th Cir. 2013), he argues that the date the state application was signed is not evidence that Petitioner delivered it to the prison authorities on that date. (Resp. at 7-8).

The date the application was signed is not *direct* evidence of the date it was placed in the prison mail. That date is still better evidence of the date of mailing than the date of receipt by the trial court because it could not have received the application on the same date that it was mailed

5

from a Texas prison.[4]  Notably, 27 days elapsed between the date that Petitioner signed his first state

application (August 26, 2011) and the date it was received by the trial court (September 22, 2011).

This is consistent with the 24-day difference between the date that Petitioner signed his second

application (June 18, 2012) and the date it was received by the trial court (July 12, 2012).

Petitioner's federal petition was placed in the mail on the date he signed it (November 14, 2012),

according to his sworn declaration, and it was received in this Court 15 days later (November 29,

2012).  There is no evidence that any delay between the date of signature and the date of receipt is

attributable to a delay by Petitioner in placing the applications in the prison mail.  The Court finds

that Petitioner's federal petition was timely-filed and should not be considered barred by the statute

of limitations.

### III.  APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.

L. 104-132, 110 Stat. 1217, on April 24, 1996.  Title I of the Act applies to all federal petitions for

habeas corpus filed on or after its effective date.  *Lindh v. Murphy*, 521 U.S. 320, 326 (1997).  Title

I of AEDPA substantially changed the way federal courts handle habeas corpus actions.  Under 28

U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court pro-
> ceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unrea-
> > sonable application of, clearly established Federal law, as determined by the
> > Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determin-

---

[4]  Respondent indicated that he would supplement the record with TDCJ mail logs once they were received, but he has not moved to supplement the record or otherwise provided the logs to show that the petition was mailed on a date later than the date of execution.

ation of the facts in light of the evidence presented in the State court proceeding.

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001).  A decision is contrary to clearly established federal law, within the meaning of § 2254(d)(1), "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

With respect to the "unreasonable application" standard, *Williams* instructs that a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001).  Likewise under *Williams*, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply."  529 U.S. at 407.  "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable."  *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact.  *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000).  Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'"  *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000).  The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence.  28 U.S.C. §

2254(e)(1).

## IV.  INDICTMENT

Petitioner asserts that the indictment was defective because the offense was not accurately and clearly described.  (Pet. at 7).  "The sufficiency of a state indictment is not a matter for federal habeas corpus review unless it can be shown that the indictment is so defective that the convicting court had no jurisdiction."  *Alexander v. McCotter*, 775 F.2d 595, 598 (1985).  The indictment alleged that on or about August 3, 2009, in Dallas County, Texas, Petitioner attempted to enter a habitation without the consent of the owner with the intent to commit theft by rattling on the door, looking in a window, and prying on the door with a shovel. (C.R.:2).  The indictment further alleged that Petitioner had two previous felony burglary convictions.  *Id*.  Petitioner has failed to demonstrate that the convicting court had no jurisdiction over his case based on this indictment. Therefore, his claim that the indictment was defective is without merit and should be denied.

## V.  VOLUNTARINESS OF PLEA

Petitioner asserts that his guilty plea was involuntary because he was coerced into pleading guilty; he believed that he would go to a drug treatment program, not prison.  He further asserts in his memorandum that he believed he was pleading pursuant to an agreement that he would receive a five-year sentence and drug treatment.  (Pet. at 7, Mem. at 5).

A plea of guilty waives a number of constitutional rights. *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969); *Joseph v. Butler*, 838 F.2d 786, 789 (5th Cir. 1988).  The Fourteenth Amendment Due Process Clause therefore imposes certain requirements to ensure the validity of a guilty plea. *Fischer v. Wainwright*, 584 F.2d 691, 692 (5th Cir. 1978), *citing Brady v. United States*, 397 U.S. 742 (1970); *Boykin*, 395 U.S. 238; *Johnson v. Zerbst*, 304 U.S. 458 (1938)).  "*Boykin* requires that

defendants have a hearing prior to entry of the plea, at which there needs to be an affirmative showing that the decision to plead guilty was voluntarily and intelligently made." *Matthew v. Johnson*, 201 F.3d 353, 368 n.22 (5th Cir. 2000).  Before the trial court accepts a guilty plea, the court must ensure that a defendant fully understands the plea and its consequences.  *Taylor v. Whitley*, 933 F.2d 325, 329 (5th Cir. 1991), *citing Boykin*, 395 U.S. at 244.  In addition, "the voluntary and intelligent nature of the plea [must] be apparent on the face of the record."  *See Holloway v. Lynaugh*, 838 F.2d 792, 793 (5th Cir. 1988).

A plea "is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.'" *Bousley v. United States*, 523 U.S. 614, 618 (1998) (quoting *Brady*, 397 U.S. at 748).  "The voluntariness of a plea is determined by 'considering all of the relevant circumstances surrounding it.'"  *Id.* (quoting *Brady*, 397 U.S. at 749).  Pleas are involuntary when induced by threats, improper promises, deception, or misrepresentation.  *See Daniel v. Cockrell*, 283 F.3d 697, 702-03 (5th Cir.), *cert. denied*, 537 U.S. 874 (2002); *United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997).  A guilty plea is invalid if the defendant does not understand the nature of the constitutional right that he is waiving or if he has an incomplete understanding of the charges such that his plea cannot be considered an admission of guilt.  *James v. Cain*, 56 F.3d 662, 666 (5th Cir. 1995), *citing Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976)).

A prisoner may not generally "collaterally attack a voluntary and intelligent" plea.  *Taylor*, 933 F.2d at 329.  "If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review."  *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980) (*en banc*), *modified on other grounds*, 646 F.2d 902 (5th Cir. 1981) (per curiam).

Petitioner asserts that he was coerced into pleading guilty with a promise of drug treatment. The state court record reflects that when he pled guilty as charged in the indictment and true to both enhancement paragraphs, he testified under oath that: 1) he understood that the crime he was charged with, enhanced by to prior felonies, had a range of punishment of 25 to 99 years or life; 2) he understood that he had the right to a jury trial and he was giving up that right by pleading guilty; 3) he understood that he was making an "open" plea of guilty to the court without a plea agreement and that he understood that he was taking a risk in having the court sentence him; and 4) he was freely and voluntarily pleading guilty and no-one was forcing him to do so. (R. 1:5-8).

At the beginning of the punishment hearing several weeks later, Petitioner again stated on the record that he understood that the range of punishment was 25 to 99 years or life imprisonment. (R. 2:4). He also signed an agreement which stated that he was making an open plea of guilty to the court, that he was pleading true to the enhancement paragraphs, and that the range of punishment was 25 years to life.(C.R.:8-9). This agreement also stated that Petitioner had a right to a jury trial, that the trial court could assess punishment anywhere within the range allowed by law, and that he understood the range of punishment, the rights he was waiving by pleading guilty, and the consequences of pleading guilty. *Id*. Finally, during a pretrial hearing, the prosecutor stated on the record that she had offered Petitioner a nine-year sentence and then a five-year sentence with the understanding that, if he declined, she would re-indict to add the enhancement paragraphs. Petitioner acknowledged that he had declined these offers because he felt that it was a "bad deal" and because he did not do what was charged. (R. Pretrial Hearing:8-9).

Petitioner has not demonstrated that his plea was involuntary. The record reflects that he was aware of the charge against him and the consequences of his guilty plea. He pled guilty voluntarily

without threats, improper promises, deception, or misrepresentations about what he was pleading guilty to or the punishment range he was facing if he pled guilty.  Petitioner has not overcome the presumption of regularity and "great weight" accorded state court records.  *See Bonvillian v. Blackburn*, 780 F.2d 1248, 1252 (5th Cir. 1986) (holding that state-court records are accorded "great weight"); *Webster v. Estelle*, 505 F.2d 926, 929-30 (5th Cir. 1974) (holding that state-court records are entitled to a "presumption of regularity").  Petitioner's guilty plea was voluntary, and this claim should therefore be denied.

## VI.  INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner also asserts that his trial counsel was ineffective prior to his decision to plead guilty.

The Sixth Amendment to the United States Constitution provides in pertinent part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."  U.S. Const. art. VI.  To successfully state a claim of ineffective assistance of counsel, petitioner must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective.  *See* 466 U.S. at 696.  Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent the alleged errors.  *Id.* at 695-96.

To determine whether counsel's performance is constitutionally deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689.  Further, "[t]he reasonableness of counsel's actions may be determined

or substantially influenced by the defendant's own statements or actions." *Id.* at 691.  To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.   A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Petitioners must "affirmatively prove prejudice." *Id.* at 693.  They cannot satisfy the second prong of *Strickland* with mere speculation and conjecture. *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992).  The *Strickland* test applies in the context of a guilty plea. *Hill v. Lockhart*, 474 U.S. 52, 57-58 (1985).

Petitioner contends that his trial attorney was ineffective because he did not file "relevant motions" or make relevant objections to preserve issues for appeal. (Pet. at 7).  Petitioner does not specify what motions should have been filed, but the record reflects that defense counsel filed a motion to suppress certain evidence and a motion for discovery, and he participated in a pretrial hearing regarding these motions and other matters before Petitioner pled guilty.  (C.R.:6; R. Pretrial Hearing:5-7).  Petitioner also does not specify what issue was not preserved for appeal.  On direct appeal, the state appellate court noted that Petitioner had not preserved for appellate review his claim of a punitive sentence, but it went on to rule against him on the merits of that claim.  *Scates*, slip op. at 1.

Petitioner has not shown that counsel was ineffective because he not shown that he was prejudiced by any alleged failure to file unspecified motions or to preserve error.  Petitioner's trial counsel did not render ineffective assistance of counsel, and his second  ground for relief should be denied.

## VII.  SUFFICIENCY OF THE EVIDENCE

Petitioner asserts that the evidence is insufficient to support his conviction for attempted burglary. (Pet. at 8). "No federal constitutional issue is raised by the failure of the Texas state court to require evidence of guilt corroborating a voluntary plea", however. *Smith v. McCotter*, 786 F.2d 697, 702 (5th Cir.1986), *quoting Baker v. Estelle*, 715 F.2d 1031, 1036 (5th Cir.1983); *see also Tristan v. Stephens*, 2013 WL 4561331, *3 (N.D.Tex. Aug. 28, 2013) (same). Under Texas state law, a judicial confession is sufficient evidence of guilt in a case in which a defendant enters a guilty plea. *See Menefee v. State*, 287 S.W.3d 9, 13 (Tex. Crim. App. 2009). Petitioner signed a judicial confession in which he stipulated that he was guilty as charged in the indictment. (C.R.:10). This ground is without merit and should be denied.

## VIII.  TRIAL COURT ERROR

Finally, in his supporting memorandum, Petitioner asserts that the trial court erred in assessing an overly punitive sentence and erred by entering a judgment that incorrectly states that he pled guilty pursuant to a plea agreement. He raised these same issues on direct appeal. The state appellate court modified the judgment to show that there was no plea bargain and affirmed the judgment as modified. *Scates*, slip op. at 1-2. Accordingly, that claim is now moot. With regard to the sentence he received, this same claim was denied on its merits on direct appeal and at the state habeas level. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). It is beyond the scope of federal habeas review to review the correctness of the state court's interpretation of state law. *Young v. Dretke*, 356 F.3d 616, 628 (5th Cir. 2004); *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998); *Weeks v. Scott*, 55 F.3d 1059, 1063 (5th Cir. 1995). The state courts determined that a sentence ten years higher than the minimum sentence

13

punishment available was not an abuse of the trial court's discretion. *See Scates*, slip op. at 1; 2nd S.H.Tr.:cover. Petitioner has not demonstrated that these decisions were contrary to federal law. This ground is without merit and should be denied.

## IX.  EVIDENTIARY HEARING

Based on the filings in this case and the proceedings held in state court, as reflected in the state-court records, an evidentiary hearing appears unnecessary.

## X.  RECOMMENDATION

The petition for habeas corpus relief under 28 U.S.C. § 2254 should be **DENIED** with prejudice.

**SIGNED on this 27th day of November, 2013.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on all parties by mailing a copy to each of them. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within fourteen days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. Failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE